IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 09-cv-02976 - LTB - BNB

SHIRLEY DOLL KOCH and
JIMMIE KOCH,

      Plaintiffs,

v.

KAZ USA, INC., and
KAZ, INC.,

      Defendants.

_____

ORDER

_____

This case is before me on Defendants' Motion for Summary Judgment on Claims for

Failure to Warn (Second Motion for Summary Judgment) [Doc # 94]. After consideration of the

motion and all related pleadings, as well as the case file, I grant Defendants' Second Motion for

Summary Judgment in part and deny it in part as set forth below.

## I.  Background

This action arises out of injuries that Plaintiff Shirley Doll Koch sustained when a

Honeywell model number HZ-690 Oil Filled Convection Radiator Heater allegedly overheated

and ruptured at a weld spot, causing the release of hot oil that burned Mrs. Koch's face and

body. Mrs. Koch alleges that the HZ-690 heater was a defective product because it lacked

common safety features and because of Defendants' failure to warn of the resulting dangers

associated with using the heater.  Mrs. Koch's asserts claims for failure to warn under theories of

negligence and strict liability.  It is undisputed in this diversity case that Colorado state law

controls.  The following facts are undisputed for purposes of Defendants' Second Motion for

Summary Judgment unless otherwise noted.

On the evening of February 14, 2008, Mrs. Koch was found unconscious by her husband

with the HZ-690 heater resting on the left side of her face.  Mrs. Koch suffered third-degree

burns to her face and head where her skin had come in contact with the heater and second-degree

burns where her skin had come in contact with either radiant heat or oil from the heater.  Little is

known about the circumstances preceding Mrs. Koch's injuries as Mrs. Koch was home alone

that day and has little recollection of how she ended up on the floor of her bedroom with the

heater on her face.  Experts for both Plaintiffs and Defendants have opined, however, that the

release of hot oil from the heater was caused by the fact that the heater was tipped on its side and

inverted resulting in the build-up of excessive pressure inside the heater.

The HZ-690 heater purchased and used by Plaintiffs had two labels affixed to it.  The

first of these labels stated "Read instructions before using" and other identifying information

about the heater and Kaz, Inc.  The second label was displayed more prominently than the first

and stated

> **CAUTION:** HIGH TEMPERATURES, KEEP ELECTRICAL CORDS,
> DRAPES AND OTHER FURNISHINGS AT LEAST 3 FT (0.9 M) FROM THE
> FRONT OF THE HEATER AND AWAY FROM THE SIDES AND REAR.

The top flap of the box for the HZ-690 heater similarly stated: "Keep combustible materials

(clothing, drapes, bedding, etc.) at least 3 ft. (0.9 m) from the sides and rear of the heater."

The safety instructions included with the heater state:

> When using electrical appliances, basic precautions should always be followed to
> reduce the risk of fire, electric shock, and injury to persons, including the
> following:

1.  Read all instructions before using this heater.

2. This heater is hot when in use. To avoid burns, do not let bare skin touch hot surface .... Keep combustible materials, such as furniture, pillows, bedding, papers, clothes and curtains at least 3 feet (0.9 m) from the front of the heater and keep them away from the sides and rear.

3. Extreme caution is necessary when any heater is used by or near children or invalids and whenever the heater is left operating and unattended. ...

16. Use this heater only as described in this manual. Any other use not recommended by the manufacturer may cause fire, electric shock, or injury to persons. ...

18. The output of this heater may vary and its temperature may become intense enough to burn exposed skin. Use of this heater is not recommended for persons with reduced sensitivity to heat or an inability to react to avoid burns. ...

20.  **SAVE THESE INSTRUCTIONS**

and

NOTE: ... THE HEATER MUST ALWAYS BE USED IN AN UPRIGHT POSITION. ...

The HZ-690 heater was not accompanied by any instructions or warnings specifically stating that the heater did not have a tip-over switch or thermal cut-off device, features which are designed to cut off power to the heater at a set angle and temperature.

## II.  Standard of Review

The very purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

"A product may be unreasonably dangerous due to a manufacturing defect, a design defect or a failure to warn." *Camacho v. Honda Motor Co.,* 741 P.2d 1240, 1247 (Colo. 1987). The purpose of a warning is to ensure that an otherwise dangerous product is used in a reasonably safe manner." *Id.* at 1248. As to the adequacy of warnings,

-4-

> The warning should be such that if followed would make the product safe for users. To comply with this duty the manufacturer or supplier must appropriately label the product, giving due consideration to the likelihood of accident and the seriousness of consequences from failure to so label it as to warn of any dangers that are inherent in it and its use or that may arise form the improper handling or use of the product.

*Hiigel v. General Motors Corp.,* 544 P.2d 983, 988 (Colo. 1976).  Further, "[t]he duty to warn may not be satisfied by directions which merely tell how to use the product, but say nothing about the inherent and specific dangers if directions are not followed." *Id.*

A failure to warn claim may be premised in negligence or strict liability. "Under a negligence theory a plaintiff is required to prove that a manufacturer's failure to warn of a risk fell below an acceptable standard of care" while "[u]nder a strict liability theory ... the focus ... is whether the defendant failed to warn of particular risks that were known or knowable in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." *Fibreboard Corp. V. Fenton,* 845 P.2d 1168, 1175 (Colo. 1993).  Despite this distinction, there is substantial overlap between the two types of failure to warn claims.  *See Bond v. E.I. DuPont De Nemours & Co.,* 868 P.2d 1114, 1120 (Colo. App. 1993) (same evidence will frequently be used to establish both types of failure to warn claims); *Halliburton v. Pub. Serv. Co. of Colo.,* 804 P.2d 213, 217 (Colo. App. 1990) (duty to warn arises for same reasons under either theory and law applicable in strict liability context is instructive in negligence cases).  In particular, a plaintiff must prove that the product was defective to prevail under a theory of strict liability and negligence. *Perlmutter v. U.S. Gypsum Co.,* 54 F.3d 659 (10th Cir. 1995) (citations omitted).

Defendants argue that the warnings that the temperatures generated by the HZ-690 heater could burn exposed skin and that the heater needed to be used in an upright position adequately

warned Plaintiffs of the dangers of operating the heater in a non-upright position and coming in physical contact with the heating unit or the radiant heat it generated.  I agree that these warnings were adequate as a matter of law to warn Plaintiff  of the risks associated with coming in direct physical contact with the heating unit and its radiant heat.  Mrs. Koch therefore cannot state a failure to warn claim against Defendants, under either a theory of strict liability or negligence, based on the injuries she sustained as result of such contact.  The more difficult question is whether the general warning that the heater should be operated in an upright position was adequate as a matter of law to warn Plaintiffs that operating the heater while it was tipped over and inverted could cause a rupture in the heating unit and a release of hot oil.

The statement in the included safety instructions that the heater must always be used in the upright position advises consumers how to use the heater but not that the heater might otherwise rupture and leak oil.  This statement therefore does not establish as a matter of law that Plaintiffs were adequately warned about the dangers of hot oil leaks if the heater was operated in a non-upright position as opposed to the obvious dangers of coming into direct contact with the heater or its radiant heat.  *See Hiigel, supra.  See also* CJI - Civ. 4th 14:4 (to be adequate, warning must inform user of any specific risk of harm that may result from intended or reasonably expected use).  My rejection of Defendants' argument that the warning about the positioning of the heater adequately warned of any risk relating to the leaking of hot oil as a matter of law should not be construed as acceptance or rejection of Plaintiffs' argument that the warnings accompanying the HZ-690 heater were inadequate because they failed to specifically advise consumers that the heater did not have a tip-over switch or thermal cut-off device.

Defendants' Second Motion for Summary Judgment also raises issues of causation and

foreseeability that call into question Plaintiffs' ability to prevail on their failure to warn claims at trial.  There are disputed issue of fact, however, that preclude the entry of summary judgment on these grounds.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that

1.  Defendants' Motion for Summary Judgment on Claims for Failure to Warn (Second Motion for Summary Judgment) [Doc # 94] is GRANTED IN PART AND DENIED IN PART;

2.  Summary judgment is entered in favor of Defendants on Plaintiff Shirley Doll Koch's failure to warn claims to the extent that these claims are based on a failure to warn of the dangers associated with coming into direct physical contact with the heater or its radiant heat while the heater was in use; and

3.  Defendants' Second Motion for Summary Judgment is denied to the extent that Plaintiff Shirley Doll Koch's failure to warn claims are based on a failure to warn of the dangers of hot oil leaking from the HZ-690 heater when operating in a non-upright position.


Dated: July   1  , 2011 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE
