IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 09-cv-02976 - LTB - BNB

SHIRLEY DOLL KOCH and
JIMMIE KOCH,

    Plaintiffs,

v.

KAZ USA, INC., and
KAZ, INC.,

    Defendants.

---

# ORDER

---

This case is before me on Plaintiffs' Motion to Exclude All Testimony and Evidence Proffered by Treating Physician Donald Ross, M.D. and Retained Expert Physician Stephen Cantrill, M.D. that Mrs. Koch's Injuries Were Caused by a Drug Overdose [Doc # 199]. As stated on the record at the hearing held on September 8, 2011 and for the reasons set forth below, I grant Plaintiffs' motion in part and conditionally deny it in part.

## I. Background

Plaintiffs seek to exclude all testimony by Drs. Ross and Cantrill relating to an opiate overdose by Ms. Koch on the basis that this testimony is inconsistent with the results of the three drug screening tests administered to Ms. Koch following the incident as well as Dr. Ross's clinical impressions when he treated Ms. Koch in the emergency room. Plaintiffs also seek to exclude Dr. Cantrill's alternative opinions that Ms. Koch overdosed on a combination of opiates and Wellbutrin or on non-prescription drugs on the basis that there is no evidence to show that

she ingested Wellbutrin near the time of the incident or that she ever took non-prescription drugs.

## II.  Legal Standard

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.  Rule 702 imposes on the district court a gatekeeper function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

Under Fed. R. Evid. 104(a), the Court determines the admissibility of expert testimony as a preliminary matter.  *United States v. Turner,* 285 F.3d 909, 912-13 (10th Cir. 2002).  First, the Court determines whether the proffered expert witness is qualified, and next whether the proffered opinions are both relevant and reliable.  Fed. R. Evid. 104(a) & 702; *Daubert*, 509 U.S. at 593.  The proponent of the evidence bears the burden of establishing that the proffered expert's testimony is admissible.  *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 (10th Cir. 2001). To satisfy this burden, the proponent of the expert testimony must make a prima facie showing that (1) the witness is qualified to render the proffered opinions; (2) the opinions are based upon scientifically valid reasoning or methodology; and (3) the opinions apply to the facts at issue in the case.  Fed. R. Evid. 702; *see also Daubert, supra*. A district court has "the same broad latitude when it decides how to determine reliability as it enjoys in

respect to its ultimate reliability determination." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 142 (1999).

In assessing the reliability of a proffered opinion, the Court may consider: (1) whether the opinion is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Hollander v. Sandoz Pharmaceuticals Corp.,* 289 F.3d 1193, 1205 (10th Cir. 2002).

Admissible expert testimony cannot be based on subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590. It must be supported by "appropriate validation – *i.e.*, 'good grounds,' based on what is known." *Id.* "The [proponent] need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the [proponent] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.,* 165 F.3d 778, 781 (10th Cir. 1999) (internal citation omitted).

Any issue of credibility or weight of the expert's testimony belongs to the trier of fact. *Frederick v. Swift Transp. Co., Inc.,* 591 F. Supp.2d 1156, 1159 (D. Kan. 2008). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "These conventional devices, rather than wholesale exclusion under an uncompromising general acceptance test, are the appropriate safeguards

where the basis of scientific testimony meets the standards of Rule 702." *Id. See also Jones v. Otis Elevator,* 861 F.2d 655, 663 (11th Cir. 1988) ("the weaknesses in the underpinnings of the opinion[ ] go to the weight and not the admissibility of the testimony").

Reliable opinions by a qualified expert must also be relevant in order to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. The question of whether proposed testimony is sufficiently relevant to the task at hand is related to the question of the testimony's reliability. *See Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 884, fn. 2 (10th Cir. 2005) ("Under the relevance prong of the *Daubert* analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case. ... The evidence must have a valid scientific connection to the disputed facts in the case."). "[W]hen the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." *Bitler v. A.O. Smith Corp.,* 391 F.3d 1114, 1121 (10th Cir. 2004).

Additionally, the Court must always balance the issues of reliability and relevancy with the possible undue prejudice that may result from the admission of evidence at trial. *See Daubert*, 509 U.S. at 595. Under Rule 403, the Court has broad discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Thus, evidence deemed admissible under Rule 702 may still be excluded under Rule 403. *See e.g. Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1310 (11th Cir. 1999).

### III. Analysis

First, Dr. Cantrill's alternative opinions that Plaintiffs that Ms. Koch overdosed on a combination of opiates and Wellbutrin or on non-prescription drugs are easily dismissed under Fed. R. Evid. 403 & 702 based on a complete lack of evidence that she ingested Wellbutrin near

the time of the incident or that she ever took non-prescription drugs. As for Dr. Cantrill and Dr. Ross's opinion that Ms. Koch suffered an opiate overdose on the day of the incident, Plaintiffs have demonstrated significant weaknesses in this opinion. At this stage in the proceedings, however, Plaintiffs have failed to demonstrate that these opinions are either unreliable or irrelevant under Fed. R. Evid. 702 or that the probative value of these opinions is substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403.

Some of the bases for the opiate overdose opinions of Drs. Ross and Cantrill are nonetheless unfairly prejudicial in light of their limited probative value on this issue. Specifically, consistent with my order on Plaintiffs' Motion to Exclude Certain Evidence Pertaining to Drugs [Doc # 198], Drs. Ross and Cantrill may not testify regarding the presence of prescription medication bottles at the scene or details of Plaintiffs' historical use of prescription drugs more than one year prior to the date of the incident to bolster their opinions that Ms. Koch suffered an opiate overdose on that date.

IT IS THEREFORE ORDERED as follows:

1. Plaintiffs' Motion to Exclude All Testimony and Evidence Proffered By Treating Physician Donald Ross, M..D. and Retained Expert Physician Stephen Cantrill, M.D. that Ms. Koch's Injuries Were Caused By a Drug Overdose [Doc # 199] is GRANTED IN PART and CONDITIONALLY DENIED IN PART;

2. Drs. Ross and Cantrill are precluded from testifying at trial about the presence of prescription medication bottles at the scene or details of Plaintiffs' historical use of prescription drugs more than one year prior to the date of the incident to bolster their opinions that Ms. Koch suffered an opiate overdose on that date;

3.  Dr. Cantrill is precluded from testifying about his alternative opinions that Ms. Koch overdosed on a combination of opiates and Wellbutrin or on non-prescription drugs; and

4.  Plaintiffs' Motion is conditionally denied insofar as it seeks to preclude Dr. Ross and Dr. Cantrill from testifying that Ms. Koch suffered an opiate overdose on the date of the incident; and

5.  Plaintiffs' Motion is conditionally denied insofar as it seeks to preclude Dr. Ross and Dr. Cantrill from testifying about prescription medications Ms. Koch took in the year preceding the incident; post-incident laboratory findings pertaining to drugs; and Ms. Koch's clinical conditions following the incident in support their opinion that she suffered from an opiate overdose on the date of the incident.

Dated: September    13   , 2011 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE